UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEFINA VARGAS,<br><br>    Petitioner,<br><br>  v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security Administration,<br><br>    Respondent. | Case No. 1:19-CV-00299-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Josefina Vargas's Petition for Review of the Respondent's denial of social security benefits, filed on August 1, 2019. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, on September 4, 2015, claiming disability beginning May 30, 2014.[1] The applications were denied initially and on reconsideration, and a hearing was conducted on June 15, 2018, before Administrative Law Judge (ALJ) David Willis. After considering testimony from Petitioner and a vocational expert, ALJ Willis issued a decision on August 15, 2018, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on June 7, 2019.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was fifty-four years of age. Petitioner lacks formal schooling beyond the first grade; is unable to speak, read or write in English; and is unable to read or write in Spanish, her native language. Petitioner's prior work experience includes a twenty-year history of seasonal work as a potato sorter.

## SEQUENTIAL PROCESS

An individual is considered disabled if he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

---

[1] Petitioner later amended her onset date to November 1, 2016.

**MEMORANDUM DECISION AND ORDER - 2**

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual "shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. § 1382c(a)(3)(B)

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged amended onset date of November 1, 2016.[2] At step two, it must be determined whether the claimant suffers from a severe medically determinable impairment. The ALJ found Petitioner's degenerative disc disease and diabetes mellitus (type II) severe within the meaning of the Regulations. The ALJ did not consider Petitioner's cataracts, neck and shoulder pain, acid reflux, hypothyroidism, gastritis, left leg weakness, decreased left grip strength, wrist abduction, and shoulder abduction severe. The ALJ found that Petitioner's evidence did not meet the criteria for a diagnosis of fibromyalgia.

Step three asks whether a claimant's impairments meet or equal a listed

---

[2] At the hearing, Petitioner testified she amended her onset date to correspond with the date she ceased babysitting her daughter's children. (AR 53.) However, the ALJ in his written decision indicated the Petitioner's onset date was May 30, 2014. (AR 36.) It appears the ALJ's reference to May 30, 2014, is in error, because later in the decision he notes the onset date occurred "about a year-and-a-half" after May of 2015. (AR 43.)

**MEMORANDUM DECISION AND ORDER - 3**

impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments. The ALJ specifically considered whether the severity of Petitioner's physical impairments, considered singly and in combination, met or medically equaled the criteria of Listing 1.04 (Spine Disorders); and 9.00 (Diabetes Mellitus and Other Pancreatic Glad Disorders), which directed the ALJ to consider all related listings for the body systems affected by poorly controlled diabetes. (AR 39 – 40.) If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and next determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

In determining Petitioner's RFC, the ALJ found that Petitioner's impairments could reasonably be expected to cause the symptoms she alleged, but that her statements about the intensity, persistence, and limiting effects of her conditions were not entirely consistent with the medical evidence and other evidence of record. (AR 40.) As part of his evaluation of Petitioner's RFC, the ALJ found Petitioner less than fully credible.

The ALJ determined Petitioner retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [The Claimant] can push, pull, lift, or carry 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday, she can stand and/or walk for 6 hours and sit for 6 hours. She can frequently climb ramps or stairs, but she can never climb ladders, ropes, or scaffolds. She can frequently balance stoop, kneel, crouch, or crawl. She will be off-task 10% of an 8-hour workday in addition to normal work breaks, and she will miss 1 day of work per month.

**MEMORANDUM DECISION AND ORDER - 4**

(AR 40.) In determining Petitioner's RFC, the ALJ indicated he considered the objective evidence of tender points related to Petitioner's fibromyalgia symptoms. (AR 39.)

Based upon the RFC determination, the ALJ found Petitioner was able to perform her past relevant work as a potato sorter. Therefore, the ALJ did not consider whether, at step five, Petitioner retained the capacity to make an adjustment to other work that exists in significant levels in the national economy, considering her residual functional capacity, age, education, and work experience. Accordingly, the ALJ found Petitioner not disabled.

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

**MEMORANDUM DECISION AND ORDER - 5**

1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

The following three issues are raised on appeal:

1. Did the administrative law judge (ALJ) reasonably conclude that the record was sufficiently developed?

2. Did the ALJ err in finding Petitioner's fibromyalgia was neither medically determinable nor severe at step two?

3. Did the ALJ reasonably evaluate Petitioner's subjective complaints concerning her symptoms?

The Court finds the ALJ erred at step two, rendering his evaluation of Petitioner's subjective complaints concerning her symptoms erroneous. The Court finds the errors were not harmless, and require remand, as explained below.

**1.    Factual Background**

Petitioner's treating providers first documented Petitioner's complaints of diffuse tender points on December 23, 2016,[3] when she complained of pain in her back, neck,

---

[3] This date is shortly after Petitioner's amended onset date of November 1, 2016.

**MEMORANDUM DECISION AND ORDER - 6**

upper back, and between her shoulder blades. (AR 473.)[4] She received trigger point injections and reported temporary relief. (AR 473.) Physical examination revealed tenderness to palpitation of the paracervical muscles and trigger points. (AR 474.)

Examinations by both Brennen Larsen, PA-C, and Dr. Gillette throughout 2017 revealed continued complaints of pain in Petitioner's neck, arms and legs with associated soreness and left sided weakness. (AR 478, 479, 480.) Examination results in January of 2017 revealed tenderness to palpitation of the paracervical muscles and cervical spine tenderness and muscle spasms, as well as diffuse tenderness of the deltoid, chest wall and upper thigh. (AR 478-479.) On June 28, 2017, Dr. Gillette recorded complaints of left head and shoulder discomfort with associated spasm and tightness. (AR 503.) Physical examination confirmed left muscle tightness with trigger points in Petitioner's neck. (AR 504.) Trigger point injections were performed, with "good effect." (AR 505-506.) Nonetheless, Petitioner's pain persisted. (AR 507.) On July 21, 2017, Petitioner complained of left side pain, along with tingling in her chest and arm. (AR 507.) Examination revealed tenderness to palpitation in her upper back and tingling in her upper arm and neck. (AR 508.) EKG results were normal, leading Dr. Gillette to conclude Petitioner's left chest pain was related to "muscular pain in this area." (AR 509.)

On January 10, 2018, Dr. Gillette recorded complaints of joint and back pain,

---

[4] Petitioner was examined by Brennen Larsen, PA-C, who was supervised by Petitioner's treating physician, Dr. Gillette.

**MEMORANDUM DECISION AND ORDER - 7**

described as worsening with sitting for long periods in the morning. (AR 527.) Anti-inflammatories helped alleviate symptoms, but the effects wore off. (AR 527.) Dr. Gillette noted painful tender points without physical abnormality bilaterally along the trapezius, base of the neck, between the elbows and knees, on the inner thighs, in the low back or sacroiliac joint, and near the ankles. (AR 528.) Dr. Gillette diagnosed fibromyalgia, and ordered lab tests, including a Sed Rate/ESR, ANA, rheumatoid factor, and CRP testing, along with a comprehensive metabolic panel, to rule out another disorder or inflammatory condition that could be causing or contributing to Petitioner's symptoms. (AR 529 – 530.)[5]

On January 26, 2018, Petitioner returned to Dr. Gillette complaining of left sided arm pain as well as general diffuse muscle pain, left sided weakness, and headache. (AR 531.) Physical examination revealed tenderness in the trapezius bilaterally, greater on left, diminished grip strength on left, and multiple tender points on her upper and lower back, knees, ankles, wrists, forearms, elbows, and shoulders. (AR 532.) Dr. Gillette confirmed his diagnosis of fibromyalgia, began a prescription for Lyrica, and administered trigger point injections. (AR 532.) Petitioner returned to Dr. Gillette's office on February 20 and 23, 2018, complaining of diffuse joint and muscle pain. (AR 533,

---

[5] SSR 12-2p indicates that other disorders that may have symptoms similar to those resulting from fibromyalgia include rheumatologic disorders, myofacial pain syndrome, polymyalgia rheumatica, chronic Lyme disease, and cervical hyperextension-associated or hyperflexion-associated disorders. SSR 12-2p, 2012 WL 3104869 at *2, n.7. Testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor). *Id.* at *2. The results of the lab tests Dr. Gillette ordered are not in the record.

**MEMORANDUM DECISION AND ORDER - 8**

536.) Multiple tender points were again noted. (AR 537.) Medication dosage was doubled. (AR 538.)

On March 31, 2018, Dr. Gillette noted some improvement in Petitioner's complaints of pain since the increase in medication dosage. (AR 541.) However, Petitioner described worsening pain in her low back when moving, and loss of grip strength. (AR 541.) She reported pain in her upper back, shoulders, and elbows, and pain with movement. (AR 541.) Examination results confirmed tender points bilaterally at the trapezius muscles, base of neck, base of head, elbows, wrists, SI joints, knees, and ankles. (AR 542.) Dr. Gillette noted he wrote an updated letter confirming she was unable to work. (AR 543.)[6] Cervical x-rays were obtained on June 25, 2018, noting normal findings of the cervical spine and no physical abnormalities that could account for Petitioner's loss of grip strength. (AR 553.) An earlier lumbar spine x-ray, taken January 5, 2016, similarly contained normal, and unremarkable findings. (AR 430-31.)

At step two, the ALJ summarized Petitioner's treatment history leading to the January 10, 2018 diagnosis of fibromyalgia, and her treatment thereafter. (AR 39.) He noted that blood tests were ordered, but that the results were not in the record. The absence of test results led the ALJ to conclude that Dr. Gillette did not rule out another etiology for Petitioner's symptoms, such as an inflammatory arthritic cause. Therefore, the ALJ concluded Petitioner's evidence did not meet the diagnostic criteria set forth in

---

[6] A copy of the letter is not in the record.

**MEMORANDUM DECISION AND ORDER - 9**

SSR 12-2p for fibromyalgia. Nonetheless, the ALJ stated that he considered Petitioner's objective evidence of tender points in developing her RFC assessment.

## 2. The ALJ Erred at Step Two

Petitioner argues the ALJ erred by failing to classify her fibromyalgia as a medically determinable impairment at step two of the evaluation process. Pet. Brief at 7 – 13. (Dkt. 16.) Petitioner contends the ALJ's error at step two resulted in a "ripple effect" of errors, specifically an erroneous credibility finding. Pet. Brief at 4, 13. Respondent argues the ALJ reasonably found Petitioner did not meet her burden at step two to prove she had fibromyalgia. Alternatively, Respondent argues any error at step two was harmless, because although the ALJ concluded Petitioner's fibromyalgia was not a medically determinable impairment, the ALJ considered Petitioner's "tender points" in developing her RFC. Resp. Brief at 7 – 8. (Dkt. 18 at 7 – 8.)

At step two, the ALJ determines if the claimant has a severe medically determinable impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). To satisfy the severity requirement, the claimant must prove the impairment by providing objective medical evidence; the claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. § 416.921. An impairment is considered "severe" if a claimant's physical or mental ability to complete basic work activities are significantly limited. *Id*. § 404.1520. Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as walking, sitting, lifting, speaking, remembering simple instructions, using judgment, and adapting to changes in a routine work setting. *See* 20 C.F.R. § 404.1522.

**MEMORANDUM DECISION AND ORDER - 10**

The purpose of this step is to filter out claims that are too weak to be eligible for disability benefits. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims."). If the analysis proceeds past step two, the lack of severity classification will usually be immaterial. *Id*. at 1048-49. This is because step two "is not meant to identify the impairments that should be taken into account when determining the RFC." *Id*. This is largely because, when the ALJ assesses the RFC in the proceeding step, he or she must consider all limitations and restrictions imposed by reason of an individual's medically determinable impairment or combination of impairments, even those not characterized as severe. *Id*. at 1049; SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996).

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p (S.S.A. July 25, 2012), 2012 WL 3104869 at *2. The Commissioner will find that a person has a medically determinable impairment of fibromyalgia if: (1) his or her treating physician diagnosed fibromyalgia and provides certain supporting evidence; and (2) the physician's diagnosis "is not inconsistent with the other evidence in the person's case record." *Id*. at *2. Briefly stated, the evidence necessary to support a fibromyalgia diagnosis is: (1) a history of widespread pain, at least eleven "tender points" on physical examination, and evidence that other possible diagnoses were excluded; or (2) a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, and evidence that other possible diagnoses were

**MEMORANDUM DECISION AND ORDER - 11**

excluded. *Id*. at 2-3. Additionally, the evidence must document that the physician reviewed the person's medical history and conducted a physical exam. *Id*.

The Court finds the ALJ did not support with substantial evidence his finding at step two that Petitioner's fibromyalgia symptoms failed to amount to a severe medically determinable impairment. Essentially, the ALJ found the medical evidence in the record did not fulfill the diagnostic criteria for fibromyalgia, because there was no evidence that other disorders, such as inflammatory arthritis, that could cause the symptoms or signs, were ruled out. (AR 39.) The record, however, does not support the ALJ's conclusion.

After continued and consistent complaints of diffuse, widespread pain since Petitioner's amended onset date of November 1, 2016, Dr. Gillette on January 10, 2018, diagnosed Petitioner with fibromyalgia based upon clinical findings that she exhibited fourteen tender points. This is three more than the diagnostic criteria set forth in SSR 12-2p require. There are test results in the record indicating Dr. Gillette considered, and ruled out, other disorders that could cause similar symptoms. He ordered an EKG to rule out other causes for her complaints of chest pain, as well as lab tests to rule out other diseases that could account for her symptoms. Although the results of the lab tests ordered on January 10, 2018, are not in the record, notably Dr. Gillette did not alter his fibromyalgia diagnosis at later visits in January, February, and March. Rather, Dr. Gillette confirmed his diagnosis of fibromyalgia, and began treating Petitioner with Lyrica instead of anti-

**MEMORANDUM DECISION AND ORDER - 12**

inflammatory medication.[7] *See Buell v. Berryhill*, 716 F. App'x 600, 602 (9th Cir. 2017) (finding the ALJ erred at step two when he concluded the claimant did not meet ACR diagnostic criteria set forth in SSR 12-2p, when claimant exhibited fourteen tender points and evidence excluded other causes). Cervical and lower lumbar spine imaging were normal, confirming there was no physical abnormality contributing to Petitioner's cervical or lumbar spine symptoms.[8]

The Court finds this evidence conforms to the diagnostic requirements set forth in SSR 12-2p and concludes the ALJ's determination that Petitioner's fibromyalgia was not a medically determinable impairment is not supported by substantial evidence in the

---

[7] Petitioner argues the ALJ had a duty to obtain the results of this lab testing and recontact Dr. Gillette. "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). But an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (citing *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)). There is some merit to Petitioner's argument here, given the ALJ was on notice that lab tests utilized to rule out other diagnoses were ordered, yet he relied upon the lack of lab results in the record to support his finding that Petitioner's fibromyalgia did not constitute a medically determinable impairment at step two. However, the Court finds the absence of the actual lab results of no moment here, where the record unequivocally establishes that Dr. Gillette confirmed his diagnosis and continued to treat Petitioner for fibromyalgia after presumably receiving the results. The record was sufficient, therefore, for the ALJ to make a determination. Nonetheless, the Court finds fault with the ALJ's reliance upon the absence of the test results in the record to support his conclusion, when it was obvious they were missing and could have been easily requested. *See Kerley v. Berryhill*, No. 2:16-CV-01841 JRC, 2017 WL 3128390, at *3 (W.D. Wash. July 24, 2017) (finding duty to develop the record was triggered when the ALJ was put on notice medical records evidencing a physical examination conducted by Petitioner's treating physician resulting in a diagnosis of fibromyalgia were missing from the record).

[8] From the record, it does not appear Dr. Gillette ordered these imaging tests. Nonetheless, the radiology reports are in the record and the ALJ considered them.

**MEMORANDUM DECISION AND ORDER - 13**

record as a whole. *See Buell v. Berryhill*, 716 F. App'x 600, 602 (9th Cir. 2017) (finding the ALJ erred at step two when he concluded the claimant did not meet ACR diagnostic criteria set forth in SSR 12-2p, when claimant exhibited fourteen tender points and evidence excluded other causes).

3.      **The ALJ's Error is Not Harmless**

An ALJ's failure to designate an impairment as severe at step two may be harmless if the ALJ nonetheless incorporates the functional limitations from that impairment in the remaining steps of the five-step evaluation. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding that any failure to list bursitis as severe at step two was harmless error where ALJ considered any functional limitations imposed by bursitis at step four); *Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005) (concluding that any failure to list obesity as severe at step two was harmless error where ALJ considered any functional limitations imposed by obesity at steps three and five and in RFC determination). Additionally, an error is generally harmless where it is "inconsequential to the ultimate nondisability determination." *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the error was not harmless, because it affected the ALJ's determinations in later steps of the sequential analysis and may have influenced the ultimate determination of Petitioner's nondisability status. *Buell v. Berryhill*, 716 F. App'x 600, 602 (9th Cir. 2017).

Respondent's argument that the error at step two is harmless because the ALJ considered Petitioner's tender point symptoms at step four is legally flawed. Respondent

**MEMORANDUM DECISION AND ORDER - 14**

Resp. Brief at 3. Respondent confuses a failure to find that an alleged impairment is medically determinable with a failure to find that a medically determinable impairment is severe. *Moore v. Berryhill*, No. CV 17-3933-E, 2018 WL 2106470, at *2 (C.D. Cal. May 7, 2018). This is because, in assessing residual functional capacity, the ALJ considers only those impairments found to be medically determinable, even if not deemed severe. 20 C.F.R. § 404.1545(a)(2). Consequently, a finding that Petitioner's fibromyalgia was not a medically determinable impairment renders the ALJ's purported consideration of "tender points" suspect. A determination that Petitioner's fibromyalgia was not medically determinable necessarily means the ALJ did not incorporate all her alleged limitations from her fibromyalgia into the RFC. *See Butler v. Colvin*, 2016 WL 8232243, at *4–5 (E.D. Wash. Aug. 23, 2016) ("[B]y classifying Plaintiff's fibromyalgia as a non-medically determinable impairment—rather than a severe or non-severe impairment—the ALJ excluded the effects of this condition when formulating Plaintiff's RFC, rendering the ALJ's RFC finding suspect"); s*ee also Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (erroneous exclusion of impairment at step two rendered RFC determination incomplete, flawed, and not supported by substantial evidence in the record); *Kerley v. Berryhill*, No. 2:16-CV-01841 JRC, 2017 WL 3128390, at *4 (W.D. Wash. July 24, 2017) (failure to find fibromyalgia was a medically determinable impairment at step two rendered RFC determination incomplete – ALJ did not credit Petitioner's fibromyalgia symptoms fully).

The failure at step two to find Petitioner's fibromyalgia a medically determinable

**MEMORANDUM DECISION AND ORDER - 15**

impairment affected the ALJ's consideration of Petitioner's symptom testimony. Although the ALJ considered Petitioner's testimony describing her pain in her neck, left shoulder, left hand, and left leg, he rejected her testimony concerning the intensity, persistence, and limiting effects of these symptoms due to a lack of objective findings and treatment with trigger point injections and anti-inflammatory medications. (AR 41.) The ALJ specifically referenced Petitioner's normal cervical spine x-ray findings and a 2016 lumbar spine x-ray documenting unremarkable findings. (AR 41, 42.) But, fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms," and there are "no laboratory tests to confirm the diagnosis." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Treatment for fibromyalgia may consist of steroid injections and medications, such as Lyrica, which was prescribed by Dr. Gillette. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (describing treatment regimen for fibromyalgia and explaining that an evaluation of the aggressiveness of a treatment regimen must consider the condition being treated).

Therefore, the lack of objective medical evidence, and treatment via trigger point injections and anti-inflammatory medications, is not a clear and convincing reason for discrediting Petitioner's complaints of pain in this case. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1164 (9th Cir. 2008). If Petitioner's fibromyalgia had been properly considered, "the ALJ may have found Petitioner's testimony regarding her pain, fatigue, and ability to function more credible, which may have impacted the RFC determination." *Allen v. Colvin*, No. 2:15-CV-01191-TSZ-DWC, 2016 WL 7368128, at *4 (W.D. Wash.

**MEMORANDUM DECISION AND ORDER - 16**

Jan. 8, 2016), report and recommendation adopted, No. 2:15-CV-01191-TSZ-DWC, 2016 WL 7368129 (W.D. Wash. Feb. 8, 2016).

Petitioner raises other issues, but the Court finds the ALJ's error at step two requires remand so that Petitioner's fibromyalgia may be properly considered as a medically determinable impairment. This requires reconsideration of each of the remaining steps in the sequential process in light of Petitioner's fibromyalgia and any work limitations caused by this impairment. Because the ALJ's error at step two impacts all aspects of the ALJ's decision, the ALJ is instructed to reevaluate the entire matter on remand. It is therefore not necessary to address the other two issues raised in Petitioner's brief. *See Allen*, 2016 WL 7368128, at *4.[9]

## CONCLUSION

Based on the above, the Court finds the ALJ must reevaluate the evidence in light of Petitioner's diagnosis of fibromyalgia. The Court will therefore remand this matter for reconsideration.

---

[9] To the extent the administrative record is incomplete, and missing the lab test results ordered by Dr. Gillette as well as his opinion letters addressed to Petitioner's employer regarding her ability to work, such deficiencies should be rectified upon remand.

**MEMORANDUM DECISION AND ORDER - 17**

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 14, 2020

Honorable Candy W. Dale
United States Magistrate Judge